The last case on the docket is number 4-13-1108, People v. Parrish Kinsey. Appearing for appellant is Attorney Jordan, and for the appellee, Attorney Hanson. Mr. Jordan, are you ready to proceed? Yes, I am, Your Honor. All right, you may. May it please the Court, Counsel. My name is Jason Jordan from the Appellate Defender's Office, and I represent Parrish Kinsey in this matter. First, I want to start with some of the facts from this case. What we have here is several officers on an alcohol ordinance detail. They're in a high-volume student housing area right next to the campus of Illinois State University. One of the officers sees a young black male walking at a high rate of speed with a laptop under his arm.  So she continues to watch Mr. Kinsey. Mr. Kinsey walks to a car. He puts the laptop inside the trunk of the car. Now, she also radios in to other police in the area to tell them what she had observed. So two other officers that were on that detail with her, Officer Stoll and Officer Drudge, they walk up and approach Kinsey at the car. And then after that, Officer Garcia and her two partners, they approach as well. As soon as they approach, they realize that Kinsey is underage and that he's been drinking, and they determine that he is effectively not free to leave. They begin to ask him about the laptop, and he evades their questions. He denies that he even put it in the trunk. Then the police ask to search his person. Kinsey consented. They found keys in his pocket. And then the police asked to search the trunk again. And then Kinsey continued to evade the questions and said that the car and the laptop belonged to Trevor. The officers testified that they took this as a refusal at trial, or at the suppression hearing. Then the police ran the license plate of the car, and it turned out that it belonged to Kinsey, and they confronted him with that. And then they asked again, and they said, can we look at the laptop in the trunk? And then, according to the testimony, Kinsey got a defeated look, kind of shrugged his shoulders, and said, yeah, go ahead. When they opened the trunk, they found a laptop. They also saw an Xbox. This is the first time they saw an Xbox. It should be noted that at this point, the police had no reports of a stolen Xbox, nor reports of a stolen laptop. At that time, they seized both items, the laptop and the Xbox, and they put them into evidence. A day later, they discovered that the Xbox had been stolen from somebody's residence. Now, the Yellow Council did file a motion to suppress and argue that Kinsey's consent was involuntary, and the court denied that motion. I make two arguments in my brief. The first argument is that Kinsey's consent was, in fact, involuntary. And the second argument is that his counsel below was ineffective for not raising other Fourth Amendment claims that would have been meritorious. Namely, that seizing the Xbox was outside the scope of consent, and there was no probable cause to support that seizure. As to my first argument, I'd like to draw the court's attention to, first off, to just some of the language in People v. Terry, this court's decision in 2008, that says that courts should consider subtly coercive questions in the vulnerable state of someone when they're giving consent. In addition, there's also factors from a Seventh Circuit case called Figueroa, Hispana, 2007. Some of those factors include the age and intelligence, education of the person, whether or not they were advised of their constitutional rights, how long they were detained, was their consent immediate or prompted by repeated requests, and whether or not they were in custody. Kinsey's consent was not voluntary. The reason it was not voluntary was because this encounter with the police started as a consensual encounter, and we can see that in our brief. But immediately, he was effectively seized and not free to leave. He was 18 years old, he was on a college campus, and he was caught underage drinking. Voluntary consent has to be born of someone's free will. Did Kinsey testify? No, he did not, Your Honor. So, when you say that the officer's unrevealed belief that he was not free to leave was obvious, isn't that a stretch in the absence of his testimony to that effect? Your Honor, I believe that it was obvious in this sense, that if you're 18 years old, you're on a college campus, and you've been drinking, and now there's seven police officers around you, that you're not free to leave. Were they around him, or were they there in the general area, and perhaps most of them were dealing with some other people? There were other people there at the car initially, Your Honor. There was testimony that there were six white males. At trial, it came out that those males were allowed to leave. We know that from testimony that Kinsey was dealing with Officer Stoll. He talked to Officer Stoll, then he talked to Officer Garcia, and then he talked to Officer Stoll again. And that those five officers on the plainclothes alcohol enforcement detail were there. In addition, Officer Garcia testified that she brought him in front of a uniformed police officer's squad car. Those were McCauley and Mitchell, I believe. So, in total, there's seven police officers in the area. He's dealing with at least two, talking to them firsthand, talking to one and then the other, and then Stoll again. And that's when the eventual search happened. So, we would argue that, I would argue that, you know, under Terry, this Court should consider the subtly coercive questions. That he was in a vulnerable state, he was drunk, he was underage, and that the police, he had already refused, and that the police kept asking him. That's interesting. How should the trial court, how should this court, review the fact, or consider the fact, that he was asked to give consent and refused? And the police didn't go ahead and search anyway. They respected his consent, at least for several minutes, while the officer involved wouldn't check them out. Isn't that correct? Yes, that's correct, Your Honor. Well, doesn't that fact, isn't that at best a two-edged sword in suggesting that if they come back and ask again, that if he continues to say no, that they will continue to be respectful of his reduction of their request? Can you rephrase that question? Yes, that was a little bit awkward, and I think I can do better, I'll try. The police respected his denial of their request to search. Correct. Some minutes passed. Right. Then they come back and talk to him again. Wouldn't the experience of their having respected his earlier refusal to consent, suggest to him that if he continues to refuse, they will continue to be respectful and not search? That's a good question, Your Honor. I would say in this situation that he is seized. He is what? He is effectively not free to leave.  Well, again, that's a different question. No one told him that, at least we have no evidence in the record. He didn't testify that that was the case. We don't know what would have happened if he had walked away. So I think at best, at this moment, the record is unclear. It may be an argument, but I don't know that it has any particular persuasive value. Let's assume for the moment that he was not under arrest. And besides that, how does that affect the question about whether he should expect the police to give further respect to his statement if they ask to search the trunk and he says no? That's really my question. Why wouldn't he think that they'll continue to respect him? Should he, now that he's learned once that police are respectful, should he assume now that police are going to be respectful again? I don't know whether he should believe that or not. Because I think in this situation, the police should have got a warrant if they wanted to look inside that. He was effectively seized, and they had got him for... Could always get a warrant, arguably, but the question is how does it affect the bond? If the normal argument is Will was overborne by the circumstances, his consent was involuntary, which is essentially how you're making things. But if the police have been respectful in the past, this is very like minutes earlier, why wouldn't he feel empowered to say, you know what I told you the last time? No, you can't search. Right. Well, you know, the police are staying there, and they're continuing to question him. I think that an 18-year-old there in that situation would not have felt free to leave. I just don't believe that, Your Honor. Okay, go ahead. I'd like to get to my second argument, that counsel below was ineffective for not arguing other claims at the suppression hearing that were meritorious. The first argument that counsel should have made, I want to go to the merits of those claims first, is that the seizure of the Xbox was outside the scope of consent that Kinsey gave. The police officers asked, can we look at the laptop in the trunk? They opened the trunk, and they see an Xbox, and they seized both items. And they had no reports of a stolen Xbox or laptop. They had a hunch that the laptop could have been stolen, and so based on that hunch, they saw another item of value next to it, and they seized that item for further inspection. It wasn't until a day later that they actually found out that the Xbox was stolen. If the seizure of the Xbox was actually outside, this is all assuming that Kinsey gave valid consent, without conceding it, of course, like I said in my brief. If it was outside the scope of consent, then the police officers would have needed probable cause to seize the Xbox for further inspection. And that's where I relied on Arizona v. Hicks, where there they went into a home, there was brand new shiny stereo equipment, which is kind of similar to here. The officer testified that the Xbox and the laptop were new and shiny here in this dirty environment. And in Hicks, the police moved the stereo equipment just a few inches to look at the serial numbers. And the Supreme Court said that that was a search for Fourth Amendment purposes, and that it was not supported by probable cause.  Here, I would argue the same thing, that even assuming that Kinsey gave valid consent, once they opened the laptop, or once they opened the trunk and saw the laptop in there, they didn't have probable cause to seize any and all items of value that were also in the trunk. It's very commonplace for an 18-year-old to have a gaming system in the trunk of his car, especially now on a Saturday night. I think this was the first weekend back from college at Elmhurst University. The request to search the trunk was granted. Wouldn't it be a question of fact to be addressed in the first instance by the trial court, how broad the request was, whether it would include whatever the police find in the trunk? Would that be a question for the trial court, Your Honor? Yes, in the first instance. For the scope of consent? Yes. What was the scope? The suppression motion was all about the consent. They testified to all the steps leading up to it. Let's assume the trial court and this court were to find the consent to be valid, that it wasn't involuntary. They open up the trunk and there's the Xbox and there's the computer. And they seized both of these items. And you're arguing the police didn't have the authority to seize which? The Xbox. The Xbox, okay. So in the first instance, there had been a hearing on a motion to suppress in which this was raised. We'd have the trial court able to address this matter. Plus, we'd also have the state on notice. By the way, the defendants say you didn't have basis to seize the Xbox and the state could then have garnered whatever other information it had, if any, we don't know, to present to the trial court in support of why they seized the Xbox. Is that true? I would rely upon Henderson for the idea that this court, whether or not this court can decide this ineffectiveness claim. No, but aren't all of these cases sui generis? And by that I mean each case is dependent upon its particular facts to determine whether or not the court has before it all of the pertinent information that is available or even could be available, all information that might be presented. Down in Henderson, the Supreme Court said, yeah, that's present in this case. How does that inform us as to the circumstances of the case before us here? I don't, I can't think of any other facts that would have come out at trial that... Officer, why did you get the Xbox? How about that question? What's the answer to? They testified to everything leading up to the question of, Yes. But no one asked them anything about the Xbox, did they? No. Are you prepared to say that there's no possible explanation on this record that an officer could have had as to why he seized the Xbox? After all, he did seize it. Why'd you seize it, officer? And the answer is? Well, the answer is if this court thinks that there needs to be another evidentiary hearing, this court can remand for a new suppression hearing under a case I cited from the 3rd District, People v. Stewart, where they reversed an ineffective claim for a failure to file a motion to suppress and remanded, just limited for a new suppression hearing. And if that's what this court wants to do, if this court wants a new hearing, then that is available to this court. Why should we do that instead of just affirming and saying, if you want to raise the ineffective assistance of counsel claim, raise it in a PC? I think because of Henderson, Your Honor. Henderson, though, was a case where the Supreme Court, a peculiar case. As a matter of fact, the Supreme Court has indicated that it is peculiar when there are no facts still to be filed. Didn't they say that? Yes, they did. So, assuming we conclude that there are too many unanswered questions here, why shouldn't we just affirm and say, go ahead and file a PC where all this can be litigated? In addition, we'll have then trial counsel explaining what he did and why he did it or why he didn't do it. Wouldn't that be desirable? I think a new motion to suppress hearing would be more desirable. I think it would be in the interest of judicial economy. I think it would avoid the kind of pro se piecemeal litigation with possible multiple appeals. It could have come on a PC. In addition, I think this is similar to Henderson. Let me give you one reason why. It's because, if not better than Henderson, because there in Henderson, the court said that the trial court would allow defense counsel considerable leeway in her examination of officers Staken and Brophy, listening to the type of testimony that would have been elicited at a suppression hearing. Here we have a suppression hearing. I think that there is enough facts here. There is not only the testimony at the suppression hearing from Officer Garcia and Officer Stoll. They also testified at trial. I think that there is enough facts here on the record, similar to what the court did in Henderson, to decide this issue here on direct appeal. Are you arguing? Go ahead. Well, I appreciate your deference to my question, but I fear I might have cut you off when you wanted to finish your answer. I want you to go ahead. I think the more appropriate than a PC here would be a new suppression hearing, Your Honor. That's all I was going to say. You seem to be arguing, I want to see if I have this correctly, that if someone has been arrested, someone's in custody, they can't give a voluntary consent to search? Back to my first argument? Yes. No, they can't, Your Honor. I thought it was only if the custody was unlawful. They've been improperly arrested. You mean if someone has been arrested legitimately that they can't consent? Yes, they can give consent, yes. Well, let me go back and ask you. I thought that was the question I just asked you. You said you can't. If someone is under arrest and there's probable cause for an arrest, can that person give legitimate consent to a search? Yes. Okay. Yes, that person can give legitimate consent. The argument is that Kinsey was in a vulnerable state, that he was not free to leave. The other argument is that there was a seamless transition that went from consensual encounter to not free to leave, and it's in that kind of murky place that we're arguing that some of these other factors, such as the Seventh Circuit decision and this Court's language that the vulnerable state of the defendant can be considered, is that this Court should look to Kinsey's age. He was 18 years old. He was in a high-volume student housing area next to a college campus. He was surrounded by seven police officers. And based on those factors, Your Honor, I think that there's enough of those factors there for this Court to find that the consent was, in fact, involuntary. Are there any other questions? I don't see any. Thank you, Mr. Jordan. You'll have time in rebuttal. Thank you. Mr. Manson? Good afternoon, Your Honors. May it please the Court, Counsel. With respect to the question of consent to search, it is clear that there was consent given. There cannot be a clearer ground for consent than, can we look in the trunk, sure, go ahead. So the claim that there was no consent has to be dismissed on that basis alone. The claim that this was the result of an illegal detention or coercion also has to fail. None of the factors used to determine custody or detention are present in this case. The defendant tries to say that this was a transitional period from a consensual to custody. There's no transition. It's consensual throughout until the very end, when the defendant is placed under arrest after they find these items in the trunk. So there is no transitional period or gray area, like one case said about a defendant where they take the driver out of the car, tell him to come back to the back of the car, give him his driver's license back and say, okay, can I search now? And they said, no, once you ask them to come back to the car, you've interfered with their ability to move and you've ordered them around. We don't have any of that here. Counsel keeps harping on seven officers in the area. They're in the area. He only dealt with Officer Shull, and that's it. That's the only officer present at the time that he was asked for the consent of the trunk of the car. Officer Shull was not in uniform, was not displaying a weapon, testified that he used a normal conversational, attorney voice. There was no demand for consent. And as Justice Fagman noted, when the first time they asked for consent to the search, the defendant said, I can't consent, it's not my car. The police honor that request. They go back, check the driver's license plate and find out, oh, by the way, this is your car. They come back and confront him with that, and says, hey, this is your car. Can we look in the car? Yeah, go ahead. I mean, that is clearly a voluntary consent, not coerced in any sort of way. Whatever subjective intent the officer had, as far as his belief that the defendant was underage drinking, or that he was maybe going to make an arrest for underage drinking, was never in any way conveyed to the defendant. So a claim that it's obvious that I'm not free to leave, I'm not free to refuse consent, just does not follow. The defendant had made one request once to consent to the car. Police honor that request. He said, no, you can't, it's not my car. When they find out it is his car, they ask again, which is perfectly reasonable, because he said, I can't consent to it, it's not my car. He says, sure, go ahead. That's voluntary consent under all these circumstances. With respect to the claim of ineffective assistance of counsel, what we have here is appellate counsel second-guessing trial counsel on the theory or procedure followed below. The decision of whether to file a motion to suppress is a matter of judgment and strategy. Here, counsel below made the judgment that the best grounds for an attack was to challenge the voluntariness of the consent, or whether there was even, in fact, a consent. That's a perfectly reasonable decision. Now, on facts, as Justice Seidman noted, facts that are not on the record. Everything stopped as far as the testimony goes once they testified to finding the Xbox, the computer, and the trunk. There is no testimony as to which officer took possession of the items. There's no testimony as to why the officers took custody of the items. There's no testimony, there's no indication on the part of trial counsel as to why he chose lack of consent rather than lack of probable cause. So I think this is the exact type of case where this should be affirmed and sent back for, say, tell the defendant, if you want to raise this, raise this in a post-conviction proceeding. The Senate back for the, in the case cited by the defendant where the appellate court sent it back for a new suppression hearing, the trial court, the appellate court, in fact, found that defense counsel, the trial counsel was ineffective because it was clear from the record and the facts before it that there was an arguable basis for a suppression. It was the only basis for suppression. It was the defendant's only hope of winning the case. On this record, you cannot say that defense trial counsel was ineffective for just raising one ground for suppression rather than using a shotgun approach and raising five or six different grounds. Well, as long as he was going to raise the one ground, how could it have hurt to add to it? By the way, why didn't you seize the X-Box? There's no justification for it. Well, he could have just determined that based on these facts that a challenge on the basis of probable cause was going to fail. What was the probable cause to seize the X-Box? Well, you have a defendant who's walking down the street at 2 a.m. wearing sunglasses. He sees a police officer, pulls out an imaginary cell phone, puts it in front of his face to block his face from the police officers, walks down the street, goes down, goes to his car, puts the computer in the trunk of the car. The police officer comes up to talk to him. He says, computer? What computer? I don't have a computer. I didn't put it in the trunk. I'm familiar with all that. Yeah, on the second thought, it is. They didn't see the X-Box before they opened the trunk, did they? No, they did not. On this record, do we have anything that indicates the X-Box was contraband or suspicious? Other than the fact that this is a high-crime area and we have a defendant who's acting suspiciously and repeatedly lying to the police? No. Well, why wouldn't? You know, it's one thing to say, well, I didn't file a motion to suppress because I didn't think there was a basis to argue for suppression, but here he filed the motion to suppress. And the grounds he raised was reasonable. It's, in fact, one of the grounds counsel is raising here today that the defendant did not consent to the search. Yeah, it's essentially a challenge to the consent that he raised at trial, wasn't it? Yes, that's correct. That was the only grounds. But as long as you're going to bother, like Grandpa's chicken soup, it wouldn't hurt to add, by the way, they seized that X-Box. What was the basis for doing that, assuming the consent was valid? Well, we also don't know what was in the police reports that the trial counsel had in front of him, which undoubtedly would have had more information than this court has before right now as to what was done and why it was done or whether the defendant was questioned about the X-Box after it was discovered. We don't know that. We don't know even whether the defendant has a possessory claim or is standing to challenge the seizure of the X-Box because we don't have a claim of ownership or possessory interest in the X-Box that even establish standing to challenge the seizure. So to say that on this blank record the trial counsel wasn't effective so that it has to go back for a new suppression hearing I think is not justified under these facts. We have a trial attorney who made a reasonable decision to make a challenge and we have appellate counsel coming up with a new theory based on no facts. You didn't ask this court to kick this matter over for a PC on this ineffective assistance issue, did you? Yes, we did. Maybe I missed it. I believe I cited payload. Yeah, it's on page 12 and 13. This court should therefore decline to address the defendant's claim of ineffective assistance of counsel. You are correct. Thank you for refreshing my recollection. Where they talk about, where this court talks about, there are so many unanswered questions we're not going to. So you think that should, as an alternative, should be the action this court takes? To just affirm and say, okay, if you want to raise this, raise this as a PC position. What about Mr. Jordan's suggestion to send it back down for an expanded hearing on the motion to suppress? Well, in that case, they only sent it back for a new suppression hearing because they found that counsel was, in fact, incompetent. And I don't think that on the facts of this case that you can find that this attorney is incompetent to require it to go back for a new hearing. If there are no further questions. Thank you, Mr. Manning. Rebuttal. Rebuttal. May it please the court. I just want to point out one thing that was pointed out in my reply brief and which is stated here in the oral argument. Just a clarification that we did not argue that this was an unlawful seizure under the Mendenhall factors. We conceded that there was a lawful seizure here because he had been caught underage drinking. I might have misunderstood your argument. I'm glad you mentioned this because I want to make sure I don't misrepresent what you're saying. I thought at first you were arguing that someone who is in custody can't give a voluntary consent. But you've now clarified that's not what you are arguing or intend to argue? The question, can somebody in custody give voluntary consent? Yes, they can. I did not say that they could not in any degree. Then I might have misunderstood what your argument was and I appreciate your clarification. Thank you. As far as there's no testimony about anything with the evidence, Officer Garcia, I believe, testified that she put the Xbox and the laptop into evidence. I believe that a remand would be much better, a much more streamlined remedy here for a new suppression hearing because these are valid meritorious Fourth Amendment claims. Consent to search is not consent to seize an item for further inspection. I believe this Court has said that in Wravely. I think a new suppression hearing would be better than a PC because, like I said before, it's going to be a pro se litigant, it's going to be piecemeal litigation, there's a possibility of multiple appeals, getting all the way to the third stage of an evidentiary hearing where this Court, I think, would be a much better use of judicial economy to remand under Stewart for a new suppression hearing. In addition, I do believe that this case is similar to Henderson, that this Court has all the facts it needs in front of it to decide this case right here on direct appeal. And so we would ask for a remand for, well, first and outright to vacate the conviction, finding that the consent was not as involuntary, but then under the ineffectiveness claim, we have two options, remand for a new trial or remand for a new suppression hearing. Are there any other questions this Court has? It doesn't appear to be so. Thank you. Thank you both. The case will be taken under advisement. A written decision shall issue. The Court stands in recess.